# NITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

RONNIE CALVAIN HOLSEY,

       Plaintiff,

vs.                                CASE NO. 3:11-cv-941-J-TEM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.[1]

_____

## ORDER AND OPINION

      This case is before the Court on Plaintiff's complaint (Doc. #1).  Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments.  *Id.*  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

      Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #18, Plaintiff's Brief).  Defendant filed her brief in support of the decision to deny disability benefits (Doc. #19, Defendant's Brief).  The Commissioner also has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by

_____

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the Reference Order dated February 16, 2012 (Doc. #16).

Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **REVERSED** and the case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

## I. PROCEDURAL HISTORY

Plaintiff, Ronnie Calvain Holsey, filed for DIB and SSI on September 25, 2008, alleging disability as of April 30, 2008 (Tr. 170-80). Plaintiff alleged an inability to work due to hypertension, degenerative disk disease in his neck and migraine headaches (Tr. 226). Plaintiff's claims were denied initially and on reconsideration. He timely requested a hearing, which was held on June 11, 2010, in Savannah, Georgia, before Administrative Law Judge (ALJ) Richard J. Stables (Tr. 43-68). Plaintiff appeared and testified at the hearing, and was represented throughout the hearing by Ruth A. Hepler (Tr. 43). At the hearing, ALJ Stables decided Plaintiff should see an orthopedic doctor for a consulting examination and medical opinion before the ALJ could decide the case (Tr. 66-67). A second hearing was ultimately held on September 28, 2010, via video between Savannah, Georgia and Jacksonville, Florida (Tr. 26).[2] ALJ Stables again conducted the hearing (Tr.

---

[2]It is unclear why it is stated in the ALJ's decision that he presided over the second hearing from St. Louis, Missouri, when the transcript of the hearing does not reflect the same (*compare* Tr. 11 *with* Tr. 26-28). Moreover, while the ALJ refers to Michael P. Sullivan as Plaintiff's attorney (Tr. 11), and the record contains a fee agreement between Holsey and Sullivan (Tr. 118-20), the record reflects Ms. Ruth Hepler actually appeared at both hearings as Plaintiff's representative (*see* Tr. 26-28, 43-45). These harmless discrepancies are merely noted for the record. Mr. Sullivan and Ms. Hepler appear to practice law together (*see, e.g.,* Tr. 645, letterhead of Sullivan & Hepler, Attorneys at Law).

2

26-42).  Plaintiff appeared and testified again at the hearing, as did vocational expert (VE) Don Harrison.  *Id.*  Plaintiff was represented throughout the hearing by Ruth A. Hepler (Tr. 26).  On November 12, 2010, the ALJ issued an unfavorable decision (Tr. 11-20).  Plaintiff requested review of the decision by the Appeals Council (AC); however, the AC denied his request, making the hearing decision the final decision of the Commissioner (Tr. 1-4). Plaintiff's current attorney of record, Ms. Chantal Harrington, filed the instant complaint (Doc. #1) in federal court on September 21, 2011.

## II. SOCIAL SECURITY ACT ELIGIBILITY AND THE STANDARD OF REVIEW

A plaintiff is entitled to disability benefits only if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[3]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through step four while at step five, the burden shifts temporarily to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).

---

[3]Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable, as well as unfavorable, to the decision. *Foote*, 67 F.3d at 1560.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *see also Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence

4

to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## III. FINDINGS OF FACT AND ANALYSIS

Plaintiff was born on May 27, 1956 and is now a fifty-six year old male (Tr. 46). Plaintiff has a tenth grade education (Tr. 47). Plaintiff is able to read, write and understand English (Tr. 225). Plaintiff describes his past relevant work as a lab tester (Tr. 227). Plaintiff previously worked in a factory an which he was a lab tester who tested the sheet rock recyclable paper to required specifications for quality control (Tr. 227). Plaintiff claims he is disabled due to hypertension, degenerative disc disease in his neck, and migraine headaches (Tr. 228). Plaintiff asserts he tried to continue working after the onset of his impairments, but was unable because of his condition. *Id.*

ALJ Staples found Plaintiff was not disabled at step four of the five step sequential evaluation process (Tr. 19-20). *See* 20 C.F.R. § 404.1520.[4] More specifically, the ALJ

---

[4]At step one, ALJ Stables found Plaintiff had  engaged in substantial gainful activity from  October 6, 2007 through April 30, 2008 (Tr. 13). Confusingly, in his applications Plaintiff alleged April 30, 2008, not October 6, 2007, as the date of disability onset (*see* Tr. 170, 173). During the September 30, 2008 telephone interview for the SSA's Disability Report-Field Office (Tr. 208-11), Plaintiff apparently gave the interviewer the date of the accident regarding his worker's compensation claim as the alleged onset date of disability (see Tr. 208). Thereafter, October 6, 2007 appears as the alleged onset date of disability throughout the SSA computer generated reports (*see, e.g.*, Tr. 183, 186, 188, 192). This matter was extensively discussed at the first administrative hearing, with Plaintiff advising he had worked at his former employer through April 30, 2008 (Tr. 47-48). At the beginning of his inquiry, the ALJ also found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014 (Tr. 11, 13).

At step two, the ALJ found Plaintiff had severe impairments: "osteoarthritis and degenerative disc disease of the cervical spine, status post fusion" (Tr. 14). At step three, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work that can be done despite his capacity

determined that despite the severe impairments of osteoarthritis and degenerative disc disease of the cervical spine, status post fusion, Plaintiff could return his past relevant work as a lab tester as that job is generally performed in the national economy (Tr. 14-20).

Essentially, Plaintiff raises four issues on appeal. First, Plaintiff asserts that the ALJ erred in relying on Dr. Dehgan's internally inconsistent opinion and in failing to reconcile the internal inconsistencies. Plaintiff's Brief at 1. Second, Plaintiff asserts that the ALJ erred when he assigned Dr. Dehgan's opinion great weight, but failed to include Dr. Dehgan's finding that Plaintiff cannot work overhead in his assessment of Plaintiff's residual functional capacity (RFC). *Id.* Third, Plaintiff asserts that the ALJ erred in finding that Plaintiff's headaches did not meet the minimum twelve-month durational requirement. Finally, Plaintiff claims the ALJ erred in failing to credit Plaintiff's pain caused by the headaches. *Id.* at 1.

The Commissioner responds that the ALJ's decision was supported by substantial evidence and decided by the proper legal standards. Defendant's Brief at 1. First, the Commissioner asserts that the ALJ was not required to discount Dr. Dehgan's conclusions because none of the inconsistencies identified by Plaintiff were fatal to the ALJ's ultimate determination of not disabled. *Id.* at 5-6. Second, the Commissioner asserts that the ALJ was not required to include additional limitations in the RFC determination or the

---

to stand and/or walk for two hours uninterrupted for a total of seven hours and sit for thirty minutes uninterrupted for a total of seven hours; bend, climb and balance occasionally; use his hands/arms for pushing and/or pulling occasionally; and tolerate occasional exposure to unprotected heights and moderate noise (equivalent to noise in an office) in the workplace (Tr. 17). At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a laboratory tester (Tr. 19). Thus, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, from October 6, 2007 through the date of the decision (Tr. 20).

hypothetical question because an ALJ does not adopt the opinion of any one medical source, but considers the totality of the evidence. *Id.* at 8. According to the Commissioner, the medical evidence, including the range of motion studies conducted by Dr. Dehgan, do not support additional functional limitations. *Id.* Finally, the Commissioner asserts that Plaintiff failed to establish the credibility of his complaints of headaches, and failed to establish that the headaches constituted a severe impairment. *Id.* at 9.

Upon review of the ALJ's decision and the record evidence, this Court finds the ALJ erred in finding Plaintiff's headaches did not meet the twelve-month durational requirement and in failing to credit Plaintiff's pain caused by his headaches.  As this case must be remanded for further proceedings to correct these errors,  the Court will limit its analysis to these issues.

**The Twelve Month Durational Requirement**

Plaintiff asserts that the ALJ erred in finding Plaintiff's headaches did not meet the twelve-month durational requirement, and failed to properly credit Plaintiff's pain caused by the headaches.  Plaintiff's Brief at 1.  Upon review of the record, this Court agrees with Plaintiff.  Substantial evidence does not support ALJ Stables' finding Plaintiff's headaches do not meet the twelve-month durational requirement; in fact, as discussed below, the opposite is true.  This error is compounded by the ALJ's failure to properly consider the pain caused by the headaches results.  A correct consideration of Plaintiff's pain caused by headaches may alter the ALJ's finding of Plaintiff's severe impairments, the ALJ's finding at step three of the five-step sequential evaluation process, the ALJ's finding of Plaintiff's RFC, and the ALJ's ultimate decision of not disabled.

Title 20 C.F.R. § 404.1509 states that unless an impairment is expected to result in

death, the impairment must last or be expected to last for a continuous period of a least twelve months.  Further, 20 C.F.R. § 404.1522(b) provides that when a claimant has two or more concurrent impairments which when considered in combination are severe, then the  question becomes whether the combined effect of the impairments can be considered severe for a period lasting at least twelve months.

Here, the ALJ found Plaintiff's headaches do not satisfy the durational requirement for a severe impairment under the Social Security Act (Tr. 14).  ALJ Stables implied that all of Plaintiff's headaches occurred during hypertensive urgency and those occurrences "were infrequent, often denied during review of systems, and were shown not to persist for 12 consecutive months during the pertinent period" (Tr. 14).  The record, however, reveals that Plaintiff's history of painful headaches clearly spans more than a twelve month period.  Plaintiff routinely complained of headaches from April 2008 through May 2009 (Tr. 442, 500, 552, 627-636, 681-86), and before.  Plaintiff reported a history of migraine headaches, and a history of  high blood pressure, on November 14, 2007 to the examining doctor during an independent medical examination for Plaintiff's worker's compensation claim (Tr. 339-41).  To his primary care physician, Dr. Willie Pennick, M.D., on November 26, 2007, Plaintiff complained of headaches when his hypertension was assessed as benign (Tr. 455-56).  Similarly, on August 7, 2007, Plaintiff presented to Dr. Pennick with complaints of headache pain, when his hypertension was benign (Tr. 457-58).  In fact, Plaintiff also consistently complained of severe headache pain from January 2010 through July 2010 (Tr. 607, 677, 777, 787).[5]

---

[5] Plaintiff underwent surgery of his cervical spine in May 2009 (Tr. 591). Dr. Ero, Plaintiff's surgeon, noted in a post-surgery visit the same month that Plaintiff's symptoms

The record reveals that Dr. Hossam Hessen, M.D., a treating physician, repeatedly diagnosed Plaintiff with "chronic headaches" from September 2007 through April 2010 (Tr. 622-44).  Dr. Hessen's treatment notes of Plaintiff, however, are extremely difficult to read and the Court is unsure what, if any medication Dr. Hessen prescribed Plaintiff for headache pain.  *See id.*  Plaintiff routinely complained of headaches to Dr. Pennick from August 2007 through at least January 2010 (*see* Tr. 442-58, 492, 594-617).  The record reveals that at various times Dr. Pennick prescribed Talwin NX (*see, e.g.*, Tr. 442, 444, 446, 455, 457) or Demerol (*see, e.g.*, Tr. 492, 606) for Plaintiff's complaints of pain.[6]  Moreover, Plaintiff checked into St. Vincent's Medical Center in December 2008, presenting with a headache and chest pain (Tr. 462-75, 500-04).  While the hospitalization involved headache, chest pains and hypertensive urgency (*see* Tr. 499, Discharge Summary), Plaintiff's reports of headaches to his doctors were more often independent of hypertension urgency (*see, e.g.*, Tr. 455, 457, 550, 558, 590, 607, 610-11).

Plaintiff was referred by Dr. Pennick to Dr. Sunday Ero, M.D., at Jacksonville Orthopedic Institute in February 2009 for further evaluation and treatment of Plaintiff's

---

of headaches and upper extremity paresthesia had essentially resolved, but again prescribed Demerol for Plaintiff's pain (Tr. 681).  Upon review of the record, it appears Plaintiff's neck surgery may have provided temporary relief from the headaches, but they reoccurred at least by January 2010, when Dr. Pennick refilled a Demerol prescription for Plaintiff and referred Plaintiff for diagnostic imaging for the headaches (Tr. 607).

[6]Talwin NX is an analgesic used to treat moderate to severe pain.  *See* http://www.drugs.com/cdi/talwin-nx.html (last visited 3/26/2013).  Demerol is a narcotic pain reliever used to treat moderate to severe pain.  *See* http://www.drugs.com/demerol.html (last visited 3/26/2013).  The Court refers to this public website for informational purposes only.  The Court accepts no responsibility for and does not endorse any content found at this website.  Furthermore, the Court's opinion is not affected should this website cease to be available to be available in the future.

"increasing neck pain, headaches, and upper extremity tingling and paresthesias bilaterally, left worse than right" (Tr. 685-86). Dr. Ero's treatment notes include references to Plaintiff's headaches on at least three occasions (Tr. 552, February 2009; Tr. 684, March 2009; Tr. 685, May 2009).  While Dr. Ero's notes indicate Plaintiff's headaches seemed to have resolved as a result of the neck surgery on May 4, 2009, Plaintiff's complaints of severe headaches were again documented by Dr. Ero  in February 2010 (Tr. 677, 681).

A medical diagnosis of headaches does not necessarily denote a severe impairment under the Social Security Act, nor does a diagnosis necessarily indicate a limitation on one's ability to work. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (finding "the severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality").  However, in this instance Plaintiff specifically alleged headaches were one of his impairments that affected his ability to work (see Tr. 226), and the ALJ incorrectly found Plaintiff's headaches did not meet the disability durational requirement.  This mistake of fact leads the Court to ask whether the ALJ failed to consider if Plaintiff's complaints of headaches may have constituted a severe impairment, or whether the headaches in combination with another one of Plaintiff's impairments could be considered severe. It is impossible to tell from the ALJ's decision whether he properly considered Plaintiff's headache pain.

The ALJ's determination of Plaintiff's residual functional capacity could easily be impacted with a thorough and accurate consideration of Plaintiff's headaches.  This Court finds Plaintiff's stated headaches clearly meet the twelve-month statutory requirement. The ALJ's finding to the contrary is not supported by substantial evidence. This case must be

remanded to properly address Plaintiff's complaints of headaches.

**The Pain Standard**

Having failed to find Plaintiff's headaches met the twelve-month durational requirement, it is impossible for the Court to ascertain if the ALJ properly applied the pain standard to Plaintiff's subjective complaints of pain. The ALJ must consider all of a claimant's statements about his or her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1520. In so doing, the ALJ must apply the Eleventh Circuit's pain standard, which requires: (1) evidence of an underlying medical condition and either, (2) objective medical evidence substantiating the severity of the pain asserted, or, (3) the objective medical condition is so severe that it can reasonably be expected to give rise to the pain asserted. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Once both prongs of the pain standard are satisfied, "all evidence about the intensity, persistence and functionality limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory finding in deciding the issue of disability." *Foote*, 67 F.3d at 1561 (citing 20 C.F.R. § 404.1529). Thus, at this stage the ALJ must consider a claimant's subjective testimony of pain. *Id.* at 1560. Furthermore, "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered in reaching a conclusion as to whether the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). Moreover, pain testimony is credible when evidence indicates the claimant's condition could reasonably be expected to cause pain; claimant consistently complained of pain; and claimant's daily activities have been significantly affected by pain. *Foote*, 67 F.3d at 1560

(citations omitted).  Thus, a determination as to pain can only be reached by looking at the entire record, including both objective and subjective evidence.

If an ALJ decides not to credit a claimant's subjective testimony of pain, he must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote*, 67 F.3d at 1561-62 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).  The articulated reasons must be based on substantial evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).  When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence.  *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (internal citation omitted).

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote.* 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any facts are conclusive if supported by substantial evidence). In *Allen v. Sullivan*, the Court found that where the ALJ articulated three specific reasons for rejecting claimant's subjective complaints of pain, the claimant's testimony was sufficiently discredited.  *Allen v. Sullivan,* 880 F.2d 1200, 1203 (11th Cir. 1989).  Importantly, the reasons provided by the ALJ in *Allen* included specific references to objective evidence, including medical evidence, which did not support the claimant's allegations.  *Id.*

Here, Plaintiff testified that he experiences severe headaches that affect his ability to function and ability to concentrate (Tr. 38, 48). Plaintiff stated that he did not know if the headaches were related to his problems with hypertension, but that the headaches had recently become more severe and more frequent (Tr. 49).  While he used to be able to

work despite the headaches, Plaintiff testified that the more severe, frequent headaches he had begun to experience prevented him from working (Tr. 49). Further, Plaintiff stated that he experiences a headache almost everyday, and that he must take strong narcotics to alleviate his pain (Tr. 49-51).

There is objective medical evidence in the record to support Plaintiff's complaints of pain.  Plaintiff identifies hypertension and neck pain as conditions that limit his ability to work; both conditions may cause associated headache pain (Tr. 14, 226). In December 2008, Plaintiff went to the emergency room at St. Vincent's Hospital complaining of headache pain, and doctors found him to be suffering from hypertensive urgency (Tr. 462). Plaintiff underwent surgery for his neck pain in May 2009 and reported some relief from pain and headaches, but reported residual neck pain and headaches shortly thereafter (Tr. 676-82). Further, as late as January 2010, doctors were treating Plaintiff for headaches, neck pain and hypertension (Tr. 607, 622).

As to Plaintiff's credibility, ALJ Stables cited seven factors from 20 C.F.R. 404.1529(c) that should be considered in conjunction with the objective medical evidence: Plaintiff's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; treatment, other than medication, Plaintiff receives or has received for relief of pain or other symptoms; any measures other than treatment Plaintiff uses or has used to relieve pain or other symptoms; and any factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms (Tr. 18). Without articulating explicit and adequate reasons for doing so, the ALJ then discredited Plaintiff's

pain testimony, finding "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible as they are not substantiated by objective medical evidence" (Tr. 19).

This Court finds the ALJ's failure to discuss the Eleventh Circuit pain standard and failure to articulate explicit and adequate reasons for discrediting Plaintiff's pain testimony requires remand of this case. The ultimate finding that Plaintiff is not disabled under the Social Security Act cannot be supported by substantial evidence when the ALJ failed to consider all of Plaintiff's impairments and associated pain, and failed to appropriately credit or discredit Plaintiff's consistent complaints of headache pain.

## IV. CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).  The case is **REMANDED** for additional proceedings consistent with this Order and Opinion.[7]  Having concluded this case must be remanded due to the errors discussed herein, the Court finds it unnecessary to address Plaintiff's other claims of error.  By declining to address Plaintiff's additional claims, the Court does not express any opinion as to those claims.  The Commissioner's reconsideration of this case on remand encompasses a reassessment of Plaintiff's impairments, which in itself requires a fresh look at the medical opinion evidence in the

---

[7]Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

record.

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law.   On remand, the Commissioner is specifically instructed to reassess Plaintiff's complaints of pain, most notably as to Plaintiff's headaches.   The Court finds Plaintiff's history of headaches meets the twelve month durational requirement for consideration of the symptom as an impairment.   If the ALJ on remand does not find Plaintiff's headaches are a severe impairment that impact Plaintiff's ability to work, the ALJ shall make that finding and point to substantial evidence in the record to support it.   The ALJ is reminded of his obligation to consider all of Plaintiff's impairments in combination, including those non-severe as well as severe impairments. If the ALJ finds Plaintiff's subjective complaints of pain are not credible, he must point to substantial evidence in the administrative record to support that finding.   The ALJ shall reassess Plaintiff's RFC in light of the reconsideration of Plaintiff's history of headaches and complaints of pain.

If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the date the Commissioner issues a "Notice of Award" letter to the Plaintiff/claimant to award disability benefits.   *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion

for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of March, 2013.


Copies to all counsel of record

THOMAS E. MORRIS
United States Magistrate Judge